**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

APTARGROUP, INC. and APTAR FRANCE
SAS,

      Plaintiffs,

      v.

ARS PHARMACEUTICALS, INC. and ARS
PHARMACEUTICALS OPERATIONS,
INC.

      Defendants.

Civil Action No. 1:25-cv-02545-DEH-SLC

JURY TRIAL DEMANDED



**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED**
**INFORMATION AND [PROPOSED] ORDER**

Plaintiffs AptarGroup, Inc. and Aptar France SAS (collectively "Aptar"), together with

Defendants ARS Pharmaceuticals, Inc. and ARS Pharmaceuticals Operations, Inc. (collectively

"ARS" and, together with Plaintiffs, "the parties") hereby stipulate to the following provisions

regarding the discovery of electronically stored information ("ESI") in this matter:

**A.**     **General Principles**

1.     Parties are expected to reach agreements cooperatively on how to conduct

discovery under Federal Rules of Civil Procedure 26–36. Accordingly, the parties agree that the

Protective Order entered into in this case (the "Protective Order") and the following provisions

will govern the exchange and production of ESI and hard copy documents in the above-captioned

matter (the "Action"), including any appeal therefrom.

2.     This Agreement is intended to assist the parties in identifying relevant, responsive

information that has been stored electronically and is proportional to the needs of the case. The

1

Agreement does not supplant the parties' obligations to comply with Federal Rule of Civil Procedure 34 or any other applicable Rules or orders of this Court.

3.      Counsel for the parties certify that they are sufficiently knowledgeable in matters relating to their clients' technological systems to competently discuss issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf.

4.      The parties agree that documents generated after the date of the Complaint in this Action (March 25, 2025) need not be searched.  Notwithstanding the foregoing, the parties agree to meet and confer in good faith regarding any requests for production of any post-Complaint information.

**B.      Preservation of ESI**

With respect to preservation of ESI, the parties agree as follows:

1.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back up and archive data if those backups and archives are duplicative of information accessible on live systems.

2.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a.      Deleted, shadowed, damaged, residual, slack space, fragmented, or other data only accessible by forensics;

b.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

c.      Data stored on photocopiers, scanners, and fax machines;

        d.      On-line access data such as temporary internet files, history, cache, cookies, and the like;

        e.      Data in metadata fields that are frequently updated automatically, such as last-opened dates;

        f.      Back-up data that are duplicative of data that are more accessible elsewhere, as well as back-up systems, archived data, or tapes used for disaster recovery;

        g.      Server, system, or network logs;

        h.      Data remaining from systems no longer in use that are unintelligible on the systems in use or that cannot be reasonably accessed;

        i.      Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage);

        j.      Dynamic fields of databases or log files that are not retained in the usual course of business.

## C.    ESI Disclosures

Within fourteen (14) calendar days of entry of this stipulation, each party shall disclose to the best of the party's knowledge the custodians most likely to have discoverable ESI in their possession, custody, or control.  The custodians shall be identified by name and title.  Custodial sources of ESI shall include, at minimum, emails in their employers' possession, custody, or control.

The parties agree to search both custodial and non-custodial sources of ESI reasonably identified as likely to contain relevant information (e.g., shared drives). Nothing in this order should be construed to limit the parties' discovery obligations under the applicable laws.

**D.    ESI Discovery Procedures**

1.    <u>Search methodology.</u> The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources, and other appropriate computer- or technology-aided methodologies. The parties agree that in the event of a claim that a particular search term or combination of terms is too burdensome, the parties will meet and confer in good faith to resolve such issues on a case-by-case basis. The parties shall continue to cooperate in revising the appropriateness of the search methodology.

2.    <u>Format.</u>

a.    Except as provided in Section D.2.c., the parties will produce their information as single-page TIFFs with associated multi-page text files containing extracted text and with appropriate software load files containing all information required by the litigation support system used by the receiving party.

b.    Each page of each document image file shall be Bates numbered. Bates numbers should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party shall, where possible, preserve the integrity of the underlying ESI, i.e., the original formatting, the metadata (as noted in Section D.6.a and Appendix A) and, where applicable, the revision history.

c.    Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheets (e.g., Excel) and audio/video multimedia files, will be produced in native format. For each document produced in its native format, a Bates numbered

TIFF image placeholder will accompany the native file. The placeholder shall contain language indicating the document was produced in native form and include the applicable Bates endorsement and confidentiality designation pursuant to the Protective Order.

                  i.        <u>Word Processing Files</u>. Word processing files, including without limitation Microsoft Word files (*.doc and *.docx), must be produced in *.tif image format such that *.tif images will display tracked changes, comments, and hidden text.

                  ii.       <u>Presentation Files</u>. Presentation files, including without limitation Microsoft PowerPoint files (*.ppt and *.pptx), must be produced in *.tif image format such that *.tif images will display comments, hidden slides, speakers' notes, and similar data in such files.

                  iii.      <u>Spreadsheet or Worksheet Files</u>. Spreadsheet files, including without limitation Microsoft Excel files (*.xls or *.xlsx), should be produced natively. If such files need to be redacted and produced in *.tif image format, such *.tif images will display hidden rows, columns, and worksheets, if any, in such files. Spreadsheet or Worksheet Files may also be redacted in native format.

                  d.      If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

                  e.      Where possible, the full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable text files and shall be named with a unique Bates number (e.g., the unique Bates number of the first page of the corresponding production version of the document followed by its file extension). For electronic documents not containing extractable text, an attempt will be made to run Optical Character Recognition (OCR), and that OCR shall be supplied in place of the extracted text.

    f.  Microsoft embedded files contained within produced documents will not be separately extracted and produced in the first instance. The parties may request production of specific embedded files if they are independently responsive and their content is not fully displayed in the produced record. Reasonable requests shall not be denied.

    g.  The parties may use reasonable efforts to filter out non-relevant and non-responsive common system files and application executable files from collections of loose ESI by using a commercially reasonable identification process, such as using the then-current deNIST provided by the National Institute of Standards and Technology.

    h.  Hard copy documents should be logically unitized (i.e., when scanning hard copy documents, multiple distinct documents should not be merged into a single record, and single documents should not be split into multiple records). In the case of an organized compilation of separate documents—for example, a binder containing several separate documents behind numbered tabs—the document behind each tab should be scanned separately.

  3.  <u>Time Specifications.</u>

    a.  All single page group IV tiff or color JPEG images for ESI should be rendered in a single time zone. Time zone shall be included in metadata fields as provided in Appendix A.

  4.  <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial sources of ESI with the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file. De-duplication must occur by an industry standard method, including MD5 or SHA-1 Hash Values. Deduplication shall not break apart families.

  5.  <u>Email threading.</u>

      a.      The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members.  The parties may exclude lesser-inclusive copies of emails in a thread only insofar as the most-inclusive email in the thread also contains all attachments and other data included in the lesser-inclusive copies.

      b.      Following production of most inclusive email threads, for good cause and subject to the proportionality standard, a receiving party may make reasonable requests for individual lesser-inclusive copies of email threads.  The producing party shall cooperate reasonably in responding to any such requests.

6.      <u>Load File Specifications.</u>

      a.      Metadata fields: The parties agree that ESI will be produced with the metadata fields described in Appendix A, to the extent they are reasonably available via standard e-discovery processing.  The first line of every metadata load file should contain the field names. The list of metadata types may be changed by agreement of the parties.

      b.      Data load file format: Concordance DAT, using the standard delimiters:

      i.      Comma: ¶  (ASCII character 020)

      ii.      Quote:  þ (ASCII character 254)

      iii.      Newline:  ® (ASCII character 174)

      iv.      Multi-value separator: ; (ASCII character 059)

      c.      Image Load File Format: Concordance OPT file.  The Opticon load file is a page level load file, with each line representing one image.

7.      <u>Color versions and native files.</u>  The parties agree to produce TIFFs in black-and-white format, except that (a) documents that are illegible or not interpretable in black-and-white shall be reproduced in color upon request and (b) a producing party that intends to rely upon a

color version of the document in any filing, discovery response, deposition, or trial must produce

the document in color as a PDF, JPEG, or native file (at the producing party's discretion).  In

addition, a receiving party may make reasonable, good faith, and proportional requests for color

versions of documents or native files by notifying the producing party of the Bates number of the

documents that it reasonably anticipates may be needed for filing, discovery response, deposition,

or trial, or that it contends is illegible or not interpretable in black-and-white.  In response to

reasonable, good faith, and proportional requests for color versions of documents or native files, a

producing party shall produce the requested documents within five (5) business days of the request

or within a timeframe that is mutually agreeable to the parties.

**E.      Encrypted or Password-Protected Files**

1.       A producing party shall make reasonable efforts to remove any encryption or

password protection that would prevent the requesting party from properly viewing a document.

That includes, at a minimum, providing any encryption keys or passwords needed to access the

document, if available.  If proprietary software or tools requiring purchase are required to view

any documents or data, the parties shall meet and confer on the production and access to such

information.

**F.      Privilege**

1.       A producing party shall create a categorical privilege log of all documents or

portions of documents withheld from production on the basis of a privilege or protection pursuant

to Local Civil Rule 26.2(c), unless otherwise agreed or excepted by this Agreement.  Privilege logs

shall provide for each category of documents at issue: the number of documents falling within the

privilege and all information required by Local Civil Rule 26.2, the Federal Rules of Civil

Procedure, and any other applicable rules in this Court.  For ESI, the privilege log may be generated

using available top-line metadata, including author/recipient or to/from/cc/bcc names; the subject matter or title; and date created.

      2.      Claims of privilege shall be determined on a document-by-document basis, even within a family. If a parent document is determined to be responsive but privileged and contains responsive, non-privileged attachments, the non-privileged documents will be produced and the privileged documents will be produced as tiff placeholder images where appropriate.

      3.      The parties agree to exchange categorical privilege logs thirty (30) days after any substantial completion deadline for production and agree to supplement those privilege logs within thirty (30) days after the close of fact discovery.

      4.      After exchanging privilege logs, the parties may request a meet-and-confer to discuss whether to exchange a document-by-document log for a limited number or percentage of the logged documents, pursuant to Local Civil Rule 26.2(c)(3).

      5.      Pursuant to Federal Rule of Evidence 502(d), the production of any documents, ESI or information in this Action shall not, for the purposes of this Action or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Agreement shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence Rule 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness, and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged, work product, or subject to any other legal protections or immunities shall be destroyed, sequestered, and/or

returned to the producing party in accordance with the applicable provisions of the Protective Order.

6.      The production or disclosure of materials or information in connection with the Action, whether by the parties or third parties, shall not be deemed a publication so as to void or make voidable whatever claim a party may have as to the proprietary and confidential nature of the documents, information, or other material or its contents.

**G.      Redactions**

1.      The producing party may redact from any TIFF image, metadata field, and/or native file, information that is protected from disclosure by applicable privilege or immunity law or regulation, including but not limited to:

a.      Information protected by the attorney-client privilege or work product doctrine.

b.      Any personal identifying information related to the privacy rights of patients, healthcare professionals, clinical investigators, clinical trial participants, employees, or voluntary reporters, including but not limited to names, initials, birth dates, death dates, street addresses, email addresses, Social Security numbers, and tax identification numbers.

2.      The producing party shall identify redactions clearly on the face of any TIFF image, with "Redacted" and the redaction reason on the face of the document if space allows.

3.      Redactions for privilege or personally identifiable information do not need to be logged.

**H.      Production Rules**

1.      The parties will produce documents that are responsive and not privileged.

2.      Family relationships for electronic data will be maintained.  If a parent document is responsive, all attachments will be produced consecutively with the parent document without

10

regard to whether the attachments are independently responsive.  If a parent document includes one or more responsive attachments, the responsive attachments will be produced consecutively with the parent document without regard to whether the parent is independently responsive.

**I.      Third-Party ESI**

1.        A party that issues a non-party subpoena shall include a copy of this Order and the governing Protective Order in this Action with the subpoena and state that the parties in the Action have requested that third parties produce documents in accordance with the specifications set forth herein.

**J.      Modification**

1.        This Stipulation may be modified by agreement of the parties.

2.        Nothing in this Agreement restricts the right of a requesting party to request additional searches or additional information about specific documents provided it can demonstrate that material, relevant, and responsive information that is not cumulative of information already produced can be found only through such additional efforts.  The parties will negotiate in good faith with regard to whether such additional efforts are reasonably required and proportional.  The Court shall resolve such disputes if agreement cannot be reached.

Dated: September 26, 2025                            Respectfully submitted,

AKIN GUMP STRAUSS HAUER & FELD          COOLEY LLP
LLP

By:  /s/ Katherine R. Goldstein_____          By:  /s/ Philip M. Bowman_____

Katherine R. Goldstein                                       Philip M. Bowman
Caitlin E. Olwell                                                 Brian Golger
AKIN GUMP STRAUSS HAUER & FELD LLP                Rona Proper

Bank of America Building
1 Bryant Park
New York, NY  10036
Telephone:  (212) 872-1000
Fax:  (212) 872-1002
kgoldstein@akingump.com
colwell@akingump.com

Steven D. Maslowski (admitted *pro hac vice*)
Ruben H. Munoz (admitted *pro hac vice*)
Karina J. Moy (admitted *pro hac vice*)
Nia Kyritsis (admitted *pro hac vice*)
AKIN GUMP STRAUSS HAUER & FELD LLP
1735 Market Street, 12th Floor
Philadelphia, PA  19103
Telephone:  (215) 965-1200
Fax:  (215) 965-1210
smaslowski@akingump.com
rmunoz@akingump.com
kmoy@akingump.com
nkyritsis@akingump.com

Anthony T. Pierce (admitted *pro hac vice*)
Golda Lai
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 K Street N.W.
Washington, D.C.  20006
Telephone:  (202) 887-4000
Fax:  (202) 887-4288
apierce@akingump.com
laig@akingump.com

*Attorneys for Plaintiffs AptarGroup, Inc. and Aptar France SAS*

Angela Jacob
COOLEY LLP
55 Hudson Yards
New York, NY 10001-2157
Telephone:  (212) 479-6000
Fax:  (212) 479-6275
pbowman@cooley.com
bgolger@cooley.com
rproper@cooley.com
ajacob@cooley.com

Chad Shear (*pro hac vice*)
Kenneth Rollins (*pro hac vice*)
COOLEY LLP
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:  (858) 550-6000
Fax:  (858) 550-6420
cshear@cooley.com
krollins@cooley.com

Laura Elliott (*pro hac vice*)
COOLEY LLP
110 N. Wacker Drive, Suite 4200
Chicago, IL 60606-1511
Telephone:  (312) 881-6500
Fax:  (312) 881-6598
lelliott@cooley.com

*Attorneys for Defendants ARS Pharmaceuticals, Inc. and ARS Pharmaceuticals Operations, Inc.*

SO ORDERED   9/29/25

_____
SARAH L. CAVE
United States Magistrate Judge

## Appendix A

## **Metadata Fields**

| Fields Name | Description |
|---|---|
| BEGBATES | The beginning Bates Number for the item. |
| ENDBATES | The ending Bates Number for the item. |
| BEGATTACH | The beginning Bates Number of the document family to which the parent document and any attachments thereto are associated. For example, for an email that is Bates stamped ABC0001 - ABC0002, with two attachments Bates stamped ABC0003 - ABC0004 and ABC0005 - ABC0008, the BegAttach and EndAttach for all three documents would be ABC0001 - ABC0008. |
| ENDATTACH | The ending Bates Number of the document family to which the parent document and any attachments thereto are associated- see above. |
| CUSTODIANS | Names of all persons from whom the file was obtained.  Multiple entities to be separated by a semicolon. |
| RECORDTYPE | Indicates document type, e.g. email, attachment, edoc, embedded file, paper., text, chat, IM |
| DATERECEIVED | For all email, text, chat, and IM documents. Date & time email was received. (mm/dd/yyyy hh:mm:ss  in "24 hour" notation). |
| DATESENT | For all email, text, chat, and IM documents. Date & time email was sent. (mm/dd/yyyy hh:mm:ss in "24 hour" notation). |
| DATECREATED | For all non-email and non-email documents. Date & time file was created. (mm/dd/yyyy hh:mm:ss in "24 hour" notation). |
| DATEMODIFIED | File date and time modified as extracted from the Native File. (mm/dd/yyyy hh:mm:ss in "24 hour" notation) |
| DATESAVED | For all non-email documents. Date & time file was last saved or modified.   (mm/dd/yyyy hh:mm:ss in "24 hour" notation). |
| DOCTITLE | For all non-email documents & attachments. Internal title given to native file. |
| SUBJECT | For email, the Subject line. |
| TITLE | For email, the Subject line.  For non-email and attachments, the internal file title, or if not available, the file name. |
| AUTHORS | For all non-email documents & attachments.  Information populated in Author metadata. |
| FROM | For all email documents. Name of person sending an email or IM conversation. |
| TO | For all email documents. Name(s) of person(s) receiving email or IM conversation. Multiple names to be separated by a semicolon. |
| BCC | For all email documents. Names of persons blind copied on an email. Multiple names to be separated by a semicolon. |
| CC | For all email documents. Names of persons copied on an email. Multiple names to be separated by a semicolon. |
| FILENAME | Name of the original native file as it existed at the time of collection. |

| Fields Name | Description |
|---|---|
| FILEEXT | File extension of native file (e.g. DOCX). |
| FOLDER | File paths/folder structures for the original native file as it existed at the time of collection. Multiple items to be separated by a semicolon. When an email/file is duplicated, multiple paths should be accounted for in this field. |
| COMMENT | For all non-email documents. Comment (if any) in file metadata. |
| HASH | Identifying MD5 value of an electronic record – used for deduplication and authentication. |
| IMPORTANCE | For all email documents. "High," or "Low" as indicated in the email. |
| PAGES | The number of pages in a document. |
| TIMEZONE | The time zone to which the document is standardized. Email: Time zone. |
| DOCLINK | Full relative path to the native file corresponding to the record. |
| TEXTPATH | Full relative path to the extracted text or OCR file corresponding to the record. |