UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

APTARGROUP, INC. and APTAR FRANCE SAS,

Plaintiffs,

v.

ARS PHARMACEUTICALS, INC. and ARS PHARMACEUTICALS OPERATIONS, INC.,

Defendants.

25 Civ. 2545 (DEH)

**MEMORANDUM OPINION AND ORDER**

---

DALE E. HO, United States District Judge:

Plaintiffs Aptargroup Inc. and Aptar France SAS (collectively "Aptar") are the original manufacturers of a single-use, intranasal delivery system used for the delivery of emergency-use medications, one example of which is Narcan. Compl. ¶ 44, ECF No. 1. Defendants ARS Pharmaceuticals, Inc. and ARS Pharmaceutical Operations, Inc. (collectively "ARS") market the product "neffy," a relatively new intranasal delivery system for epinephrine, offering an alternative to the traditional injection delivery system commonly referred to as an EpiPen. *Id.* ¶ 5. Aptar was the holder of the now-expired patent for the underlying nasal delivery system and worked with ARS to integrate their formerly-patented system with epinephrine for the production of neffy. *Id.* ¶¶ 45, 105. After the initial launch of neffy, ARS announced that they would be switching suppliers for nasal delivery systems to a generic competitor of Aptar, Silgan, obtaining a cheaper, nearly identical nasal delivery system for future production of neffy products. *Id.* ¶ 182. Aptar alleges that ARS misappropriated Aptar's proprietary trade secrets to allow Silgan, a company with no prior experience manufacturing drug delivery systems, to quickly and cheaply produce nasal delivery systems so similar to those produced by Aptar that the FDA has deemed them "interchangeable." *Id.* ¶¶ 190-228. Aptar claims ARS's actions violate state and federal trade

secrets law, in addition to constituting breach of various contractual arrangements prohibiting the sharing of Aptar's proprietary, non-public information.

ARS moves to dismiss, arguing that Aptar has failed to state a claim for trade secrets violations or breach of contract.   As discussed herein, the Court concludes that Plaintiffs have adequately alleged violations of federal trade secrets law, in addition to claims for breach of contract.   However, the Court concludes that the state common law trade secrets claim fails as duplicative of the breach of contract claims.   Accordingly, the Motion is **GRANTED IN PART AND DENIED IN PART**.

### I.    Legal Standard

The Court assumes familiarity with the facts alleged in the complaint and references the allegations as necessary throughout this opinion.   To survive a motion to dismiss pursuant to Rule 12(b)(6)[1], "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).[1]   In assessing the complaint, the court "must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Id.* at 106-07.   But the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   "[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.  In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

**II.    Trade Secrets**

"The [Defend Trade Secrets Act, or] DTSA provides a private right of action for '[a]n owner of a trade secret that is misappropriated . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce.'" *Zabit v. Brandometry, LLC*, 540 F. Supp. 3d 412, 419 (S.D.N.Y. 2021) (quoting 18 U.S.C. § 1836(b)(1)). "To prevail on its claim for trade secret misappropriation under the DTSA, a plaintiff must prove that "(1) it possessed a trade secret, and (2) the defendant misappropriated the trade secret." *Adomni Inc. v. Cleartrust Media, LLC et al.*, No. 23 Civ. 10338, 2026 WL 658446, at *7 (S.D.N.Y. Mar. 9, 2026).

ARS first argues that Aptar fails to allege that the allegedly misappropriated information is a "trade secret." Mem. of Law in Supp. of Mot. To Dis. ("Mot.") at 7, ECF No. 39. The DTSA defines "trade secret" to include "all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes," so long as: (1) "the owner thereof has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3); *see also Zabit*, 540 F. Supp. 3d at 421. "The existence, vel non, of a trade secret usually is treated as a question of fact," and properly the province of the jury. *Chevron U.S.A., Inc. v. Roxen Serv., Inc.*, 813 F.2d 26, 29 (2d Cir. 1987); *see also Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 274 (S.D.N.Y. 2021); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp.*, No. 15 Civ. 211, 2020 WL 1442915, at *9 (S.D.N.Y. Jan. 27, 2020), *report and recommendation adopted*, 2020 WL 1435645 (S.D.N.Y. Mar. 24, 2020). That said, judgment on the pleadings may be appropriate "where it is clear that the information at issue

3

is not actually secret or there is no discernible economic value from that information not being generally known." *Catalyst Advisors*, 2024 WL 522751, at *18 (addressing the propriety of granting a motion to dismiss a DTSA claim); *see also Better Holdco, Inc. v. Beeline Loans, Inc.*, 666 F. Supp. 3d 328, 384 (S.D.N.Y. 2023).

Because the nasal spray system was patented, ARS argues that the information within the patent cannot be protected as a trade secret. *Yeda Rsch. and Dev. Co. Ltd. v. iCAD, Inc.*, 2019 WL 4562409, at *5 8 (S.D.N.Y. Sept. 5, 2019) (dismissing a trade secret claim because the allegedly protectable trade secrets were covered by patents). However, the Court concludes that ARS overlooks Aptar's plausible allegations that ARS shared significant information beyond what is publicly disclosed in the patent, including

> (A) device composition and tolerances trade secrets (which include (1) polymer/resin composition ([Compl.] ¶¶ 49-53) and (2) dimensional tolerances (*id.* ¶¶ 54-57));
>
> (B) device reliability trade secrets (which include (3) fault tree analysis (*id.* ¶¶ 58-62), (4) spray characterization, performance, and related FMEA (*id.* ¶¶ 63-66), and (5) actuation force analysis, methodology, and related FMEA (*id.* ¶¶ 67-70)); and
>
> (C) device manufacturing trade secrets (which include (6) mold design and testing (*id.* ¶¶ 71-75), and (7) manufacturing and assembly controls and conditions (*id.* ¶¶ 76-82)).

Mem. of Law in Opp. to Mot. To Dis. ("Opp.") at 2, ECF No. 43. Plaintiffs further allege that each of the seven categories of proprietary information "plays a role in the successful mass manufacturing of a device that meets the FDA's 99.999% reliability standard and other regulatory standards." *Id.* at 2-3 (citing Compl. ¶¶ 46, 196, 200, 205, 226). Aptar also alleges that this information is tied to specific documents shared with ARS and that Aptar took sufficient steps to keep such information secret. Compl. ¶¶ 89-105. Accordingly, the Court concludes that, as alleged, the information that was purportedly misappropriated by ARS plausibly consists of trade secrets. *See Adomni*, 2026 WL 658446, at *8 ("A reasonable jury could conclude that the pricing

4

and customer preference information was secret based on the factual record before the Court");
*Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 117 (2d Cir. 2009) (drawings containing "dimensions and tolerances . . . and special instructions for manufacturing, testing, and assembly" contained trade secrets); *see also Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 518 (S.D.N.Y. 2017) (explaining that plaintiffs can still have "a viable trade secret claim" if "elements of the trade secret go beyond what was disclosed" in the patent application).

ARS next argues that Aptar fails to allege with specificity when and how ARS shared such information with Silgan. However, on a motion to dismiss, the Court is required to draw all reasonable inferences in the Plaintiffs' favor in determining whether the Complaint plausibly states a claim. *Sacerdote*, 9 F.4th at 106-07. The Court concludes that Aptar plausibly alleged that ARS had the motive and opportunity to share Aptar's trade secrets with Silgan in order to expedite a cheaper alternative for the production of neffy. *See* Compl. ¶¶ 106-252. The Court further concludes that the circumstantial evidence—here, that ARS had a substantial financial motive to share Aptar's trade secrets, and that a company with no prior experience in the relevant market was able to quickly develop an "interchangeable" copy of Aptar's product—allows for a reasonable inference that such information was improperly shared with Silgan. *See id.* The Court declines to hold that Plaintiffs must obtain information regarding the specific details of the illicit sharing of confidential information, without the benefit of discovery, to survive a motion to dismiss. To do so would essentially impose a heightened pleading standard under Rule 9(b) instead of the standard notice pleading requirements of Rule 8, which are applicable here.

Accordingly, the Motion to Dismiss Count I is denied.

### III.   State Law Claims

Aptar also brings claims alleging trade secrets misappropriation and breach of contract under New York law. When a "complaint sufficiently plead[s] a DTSA claim[, it] also states a

claim for misappropriation of trade secrets under New York law." *Rocket Pharms., Inc. v. Lexeo Therapeutics, Inc.*, No. 23 Civ. 9000, 2024 WL 3835264, at *3 (S.D.N.Y. Aug, 14, 2024); *see also Iacovacci v. Brevet Holdings*, LLC, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020) ("The elements for a misappropriation claim under New York law are fundamentally the same."). However, a "misappropriation of trade secrets claim cannot rely on the same facts that underlie a breach of contract claim unless the plaintiff can allege that the defendant breached a duty *independent* of those covered under the contract." *Converged Compliance Sols., Inc. v. XOP Networks, Inc.*, No. 21 Civ. 5482, 2024 WL 4665114, at *11 (S.D.N.Y. Sept. 25, 2024). Thus, the Court must determine the scope of the contract claims.

To successfully bring a breach of contract claim, a plaintiff must establish: "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach." *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011). ARS concedes that the "Complaint's theory of breach is based on the same conduct underlying the misappropriation claims—ARS 'disclosing Aptar's confidential and proprietary information to Silgan for the benefit of ARS.'" Mot. at 24 (citing Compl. ¶¶ 293, 300, 307). As the Court has already discussed, Aptar has plausibly alleged the ARS shared confidential information with Silgan to expedite the production of a cheaper alternative nasal delivery system. And there is no dispute that several binding contracts prohibited such conduct. Accordingly, the Motion is **DENIED** with respect to Counts III, IV, and V.

Turning to the common law trade secrets claim, "[u]nder New York law, when a valid agreement governs the subject matter of a dispute between parties, claims arising from that dispute are contractual." *Poplar Lane Farm LLC v. Fathers of Our Lady of Mercy*, 449 Fed. Appx. 57, 59, 2011 WL 5966373 at *1 (2d Cir. Nov. 30, 2011). "However, a defendant 'may also breach an

6

independent duty in tort if the defendant goes beyond a mere breach of the contract and acts in such a way that a trier of fact could infer that it willfully intended to harm the plaintiff.'" *Opternative, Inc. v. Jand, Inc.*, No. 17 Civ. 6936, 2018 WL 3747171, at \*7 (S.D.N.Y. Aug. 7, 2018) (quoting *Carvel Corp. v. Noonan*, 350 F.3d 6, 16 (2d Cir. 2003)).

Aptar argues that the claim asserts relief beyond that of the breach of contract claim because ARS's conduct was "willful" in attempting to harm Aptar by disclosing their proprietary information to Silgan. *Hedgeye Risk Mgmt., LLC v. Dale*, No. 21 Civ. 8637, 2023 WL 6386845, at \*10 (S.D.N.Y. Sep. 29, 2023) (inferring "willful conduct intended to harm Plaintiff" because defendant, a former employee, "was unhappy with his compensation and that his behavior became 'increasingly erratic and threatening' before he left the Company"). However, Aptar alleges no facts suggesting that ARS intended to *harm Aptar* rather than simply to derive financial benefit from a cheaper input for neffy. *See Carvel*, 350 F.3d at 17 (finding independent common-law duty for acts covered by contract where breaching contract directly harmed a competitor to Defendants' businesses). The Court concludes that Aptar has failed to allege the kind of "willful intent to harm" that courts have found to be non-duplicative of a breach of contract claim. *See Hedgeye Risk Mgmt.*, 2023 WL 6386845, at \*10. Accordingly, Count II is dismissed.

## CONCLUSION

For the reasons stated herein, Defendants' Motion to Dismiss is **GRANTED IN PART AND DENIED IN PART**. Count II is **DISMISSED**. Because "court[s] should freely give leave [to amend] when justice so requires," Rule 15(a)(2), Aptar may seek leave to amend its Complaint to allege facts stating a claim for Count II in accordance with this Court's Individual Rule 4(f) within 30 days of the publication of this Opinion and Order. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). Any

7

such motion for leave shall be accompanied by a proposed amended complaint and a redline comparing the proposed amended complaint to the operative one, and shall explain how the amendments address the deficiencies with Count II discussed in this Order.

The Clerk of Court is respectfully directed to terminate ECF No. 38.


SO ORDERED. Dated:

March 27, 2026

New York, New York

_____
DALE E. HO
United States District Judge