UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APTARGROUP, INC. and APTAR FRANCE SAS,

Plaintiffs,

v.

ARS PHARMACEUTICALS, INC. and ARS PHARMACEUTICALS OPERATIONS, INC.,

Defendants.

CIVIL ACTION NO.: 25 Civ. 2545 (DEH) (SLC)

**OPINION & ORDER**[1]

**SARAH L. CAVE,** United States Magistrate Judge.

## I. INTRODUCTION

Before the Court in this trade secret misappropriation action is the motion of Plaintiffs AptarGroup, Inc. and Aptar France SAS (together, "Aptar") for leave to amend the common law trade secret claim (the "NY Trade Secret Claim") to address the deficiencies the Honorable Dale E. Ho found in his March 30, 2026 memorandum opinion and order granting in part and denying part the motion to dismiss filed by Defendants ARS Pharmaceuticals, Inc. and ARS Pharmaceuticals Operations, Inc. (together, "ARS"). See AptarGroup, Inc. v. ARS Pharm., No. 25 Civ. 2545 (DEH), 2026 WL 866954, at *4 (S.D.N.Y. Mar. 30, 2026) ("Aptar I"). (Dkt. No. 105 (the "MTA")). ARS opposes the MTA as futile and prejudicial. (Dkt. No. 120). For the reasons set forth below, the MTA is **GRANTED**.

[1] This Opinion & Order is temporarily being docketed under seal given the confidentiality designations in the parties' filings. As set forth in § IV, infra, if the parties seek any redactions to this Opinion & Order, by July 1, 2026, the parties shall file, under seal, for the Court's review, a single document bearing the parties' proposed redactions. The Court will consider the proposed redactions and prepare and file a public version of this Opinion & Order.

## II. BACKGROUND

We incorporate by reference the factual background to Aptar's claims set forth in Aptar I and set forth only the additional background necessary to analyze the MTA. See Aptar I, 2026 WL 866954, at *1.

In Aptar I, Judge Ho dismissed Aptar's NY Trade Secret Claim because Aptar "failed to allege the kind of 'willful intent to harm' that courts have found to be non-duplicative of a breach of contract claim." 2026 WL 866954, at *4. Judge Ho noted that Aptar failed to allege "facts suggesting that ARS intended to harm Aptar rather than simply to derive financial benefit from a cheaper input for neffy." Id. Having failed to distinguish the NY Trade Secret Claim from its breach of contract claim, Judge Ho dismissed the NY Trade Secret Claim, but with leave to amend. Id.

The parties have been engaged in fact discovery, the current deadline for completion of which is July 27, 2026. (Dkt. No. 48 (the "CMP")). The Court has conducted periodic discovery conferences to resolve the parties' ongoing discovery disputes. (Dkt. Nos. 45; 56; 61; 65; 66; 70; 77; 78; 82; 89; 90; 102; 117; 121; 126; 129; Dkt. minute entries dated Aug. 25, 2025, Nov. 4, 2025, Nov. 20, 2025, Jan. 14, 2026, Feb. 24, 2026, Mar. 9, 2026, Apr. 8, 2026, May 12, 2026, May 28, 2026).

On April 29, 2026, Aptar filed the MTA with the Proposed First Amended Complaint ("PFAC"). (Dkt. Nos. 105-112). In the PFAC, Aptar adds the following allegations to the NY Trade Secret Claim to address the deficiencies Judge Ho pointed out and to attempt to show that ARS willfully intended to harm Aptar:

1. ARS sought to divert Aptar's customers toward Silgan by aiding Aptar's "[redacted] customer" for the UDSl in "negotiating pricing terms to

undercut Aptar, as part of a supply agreement for Silgan's unlawful copycat version of Aptar's UDSl[,]" and by providing guidance about information the customer "needed to submit to the FDA to support qualifying the Silgan device for use with that customer's emergency-use product." (Dkt. No. 106-2 ¶¶ 270–72 (the "Diversion Allegations")).

2. In 2023, ARS "doctored a confidential Aptar document" regarding Aptar's manufacturing activities, a document that Silgan then submitted to European regulators. Aptar alleges that ARS's actions contradict ARS's December 2024 representation to Aptar that ARS did not use Aptar's confidential information to support Silgan's regulatory application. (Id. ¶ 229 (the "Doctoring Allegations")).

3. In August 2024, ARS placed a purchase order with Aptar for a disproportionately large number of plungers — one of the components in neffy — for the stated purpose of "conduct[ing] stability testing[,]" when, in fact, ARS "designed this purchase order to obtain larger volumes of the single-dose intranasal system from Silgan rather than Aptar." (Id. ¶¶ 255–56).[2] Aptar alleges that "ARS lied to Aptar about the intended use of the surplus plungers in order to conceal that ARS had a second supplier of an unlawful copycat UDSl." (Id. ¶ 257 (the "Purchase Order Allegations")).

On May 13, 2026, ARS filed its opposition to the MTA (Dkt. No. 120), and on May 20, 2026, Aptar filed its reply. (Dkt. No. 123).

## III. DISCUSSION

### A. Legal Standards

#### 1. Federal Rule of Civil Procedure 15(a)(2)

"Under Federal Rule of Civil Procedure 15(a)(2), after the expiration of the period in which a party may amend its pleading as a matter of course, the party may amend its pleading 'only with the opposing party's written consent or the court's leave.'" Harleysville Worcester Ins. Co. v. Consigli & Assocs., LLC, No. 21 Civ. 934 (PAE), 2023 WL 4684652, at *4 (S.D.N.Y. July 21, 2023)

[2] The allegation quotes ARS's allegation in an antitrust complaint filed in the United States District Court for the Southern District of California. See ARS Pharms. Op., Inc. v. AptarGroup, Inc., No. 25 Civ. 2571 (BJC) (VET) (S. D. Cal.), Dkt. No. 1 ¶ 11.

(quoting Fed. R. Civ. P. 15(a)(2)).[3] A "court should freely give leave when justice so requires[,]" Fed. R. Civ. 15(a)(2), and in the absence of countervailing factors such as bad faith, undue delay, prejudice to the opposing party, or futility of the amendment. See Foman v. Davis, 371 U.S. 178, 182 (1962). "[E]ven where such factors are present, the rule in this Circuit has been to allow a party to amend its pleading in the absence of . . . prejudice or bad faith." Harleysville Worcester Ins. Co., 2023 WL 4684652, at *4. "Delay alone is usually not a sufficient reason for denying a motion to amend." Id. A court may deny leave to amend "where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice other parties, or where the belated motion would unduly delay the court of proceedings by, for example, introducing new issues for discovery." State Farm Ins. Cos. v. Kop-Coat, Inc., 183 F. App'x 36, 37–38 (2d Cir. 2006). "The non-moving party has the burden to show any prejudice from the proposed amendment." Harleysville Worcester Ins. Co., 2023 WL 4684652, at *4.

**2. NY Trade Secret Claim**

As Judge Ho explained in Aptar I, a complaint that sufficiently pleads a claim under the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(1) (the "DTSA"), "also states a claim for misappropriate of trade secrets under New York law." 2026 WL 866954, at *3. To support the NY Trade Secret Claim, however, Aptar "cannot rely on the same facts that underlie a breach of contract claim unless [it] can allege that [ARS] breached a duty independent of those covered under the contract." Id. In Aptar I, Judge Ho found that Aptar "plausibly alleged [that] ARS shared confidential information with Silgan to expedite the production of a cheaper alternative nasal

[3] Internal citations and quotation marks are omitted from case citations unless otherwise indicated.

delivery system" in violation of the agreements between the parties, such that the Contract Claim survived dismissal. Id. Apart from contractual duties under New York law, "a defendant may also breach an independent duty in tort if the defendant goes beyond a mere breach of the contract and acts in such a way that that a trier of fact could infer that it willfully intended to harm the plaintiff." Id. at *4. Thus, for Aptar to state a plausible NY Trade Secret Claim, it must allege "facts suggesting that ARS intended to harm Aptar rather than simply to derive financial benefit from a cheaper input for neffy." Id.

**B. Application**

Construing the PFAC in the light most favorable to Aptar, see Northwestern Nat'l Ins. Co. of Milwaukee, Wis. v. Alberts, 717 F. Supp. 148, 153 (S.D.N.Y. 1989), and applying the "liberal" and "permissive" standard for leave to amend, Harleysville Worcester Ins. Co., 2023 WL 4684652, at *4, we grant the MTA because the amendments to the NY Trade Secret Claim are neither futile nor unduly prejudicial to ARS.

**1. Futility**

An amendment is futile if it would not survive dismissal under Rule 12(b)(6) for want of "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Brodt v. City of N.Y., 4 F. Supp. 3d 562, 567 (S.D.N.Y. 2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Facial plausibility exists when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

We consider whether Aptar's three new allegations in support of the NY Trade Secret Claim plausibly allege "facts suggesting that ARS intended to harm Aptar rather than simply to derive financial benefit from a cheaper input for neffy." Aptar I, 2026 WL 866954, at *4.

**a. The Diversion Allegations**

Aptar first argues that the PFAC "alleges that ARS schemed to harm Aptar's business by diverting Aptar's customers to Silgan," including through advising an Aptar customer about price negotiations and the process for obtaining FDA approval of Silgan's alternative device. (Dkt. Nos. 106 at 11; 106-2 ¶¶ 270–272). Based on this allegation, Aptar argues that it has plausibly alleged that ARS "wanted to harm Aptar's business by dissuading other customers from purchasing the UDSl." (Dkt. No. 106 at 11). ARS responds that these allegations "describe nothing more than competitive conduct to reduce ARS's own costs and diversify its supply chain" and are "insufficient to establish the requisite willful intent to harm." (Dkt. No. 120 at 9).

ARS's objection is inapposite for the pleading stage, at which Aptar is not required to "establish" that ARS harbored a willful intent to harm, but only must plead facts giving rise to a plausible inference about ARS's intent. See Brodt, 4 F. Supp. 3d at 567. The Diversion Allegations are like those in Reed Constr. Data Inc. v. McGraw-Hill Companies, Inc., in which the court found that allegations that the defendant used the plaintiff's confidential information to divert the plaintiff's customers, which harmed the plaintiff's business and "prevent[ed] it from reaping the full profits of its own information[,]" were sufficient to state a common law misappropriation claim. 745 F. Supp. 2d 343, 353 (S.D.N.Y. 2010). Unlike the cases ARS cites involving tortious interference claims (Dkt. No. 120 at 9–10) — which require the defendant to have "acted with the sole purpose of harming the plaintiff[,]" Gun Hill Rd. Serv. Station, Inc. v. ExxonMobil Oil

Corp., No. 08 Civ. 7956 (PKC), 2013 WL 395096, at *15 (S.D.N.Y. Feb. 1, 2013) (emphasis added); accord Kirch v. Liberty Media Corp., 449 F.3d 388, 400 (2d Cir. 2006) — ARS does not cite any case holding that, to state a NY Trade Secret Claim, Aptar must allege ARS's harmful intent to the exclusion of any other motive. In any event, Judge Ho has already recognized that "Aptar plausibly alleged that ARS had the motive and opportunity to share Aptar's trade secrets with Silgan in order to expedite a cheaper alternative for the production of neffy." Aptar I, 2026 WL 866954, at *3. A plausible inference from the Diversion Allegations is that ARS was trying to channel business from Aptar to Silgan, to Aptar's detriment, which distinguishes the NY Trade Secret Claim from Aptar's contractual claims.

Accordingly, granting leave to amend to add the Diversion Allegations in support of the NY Trade Secret Claim is not futile.

**b. The Doctoring Allegations**

Aptar also alleges that ARS "doctored" one of Aptar's documents, changing its label from Aptar to Silgan, so that Silgan could submit the document to European regulators. (Dkt. No. 106-2 ¶ 229). ARS maintains that these Doctoring Allegations "establish only that ARS complied with Silgan's request to support regulatory review and approval of its device," which would also benefit ARS. (Dkt. No. 120 at 10).

Again, ARS misstates the pleading standard — Aptar only needs to plead facts giving rise to a plausible inference of harmful intent, not "establish" that intent as an evidentiary matter. See Brevet Holdings, LLC v. Enascor, LLC, No. 21 Civ. 1540 (MKV), 2022 WL 3916376, at *10 (S.D.N.Y. Aug. 31, 2022) ("While evidence as developed may support Defendants' argument that the allegations all constitute nothing more than a potential breach of contract, at the pleading

stage, [plaintiff's] allegations are sufficient plausibly to support an inference that Defendants are liable for torts independent of the alleged breach of contract."). As in Brevet, the Doctoring Allegations here support a plausible inference that ARS used Aptar's confidential information to bolster Silgan's application for regulatory approval of its alternative device, so Silgan could compete with Aptar, to the mutual benefit of Silgan and ARS, and to Aptar's disadvantage. Id.; see also Freedom Mortg. Corp. v. Tschernia, No. 20 Civ. 1206 (AJN), 2021 WL 1163807, at *7 (S.D.N.Y. Mar. 26, 2021) (finding unfair competition claim not duplicative of contract claim where defendants sought to profit from competitor's goodwill).

Accordingly, granting leave to amend to add the Doctoring Allegations in support of the Trade Secret Claim will not be futile.

**c. The Purchase Order Allegations**

Aptar's third set of new allegations in support of the NY Trade Secret Claim concern ARS's August 2024 purchase order for a disproportionately large number of plungers (in comparison to the number of actuators and container holders), the explanation for which, ARS told Aptar, was "stability testing." (Dkt. No. 106-2 ¶ 255). Aptar alleges that, in fact, ARS ordered a larger number of plungers to use with Silgan's device, rather than Aptar's, in the neffy product. (Id. ¶ 256). Aptar contends that it has caught ARS lying to conceal from Aptar "that ARS had a second supplier of an unlawful copycat UDSl." (Id. ¶ 257). ARS responds that the information about its second supplier was public by June 2024, before the purchase order, so it is "facially implausible" that ARS intended to conceal information from Aptar. (Dkt. No. 120 at 11). Aptar adds that the June 2024 disclosure to which ARS refers was too "vague" to put "Aptar on notice that ARS sought to use Aptar's plungers in a competitor's device." (Dkt. No. 123 at 8).

Even if the June 2024 disclosure put Aptar on notice that ARS was using the plungers with Silgan's device, a plausible inference from the Purchase Order Allegations is that ARS placed an unusually large order for plungers and misrepresented to Aptar the reason for doing so. By alleging that ARS "fraudulently misrepresented its intentions" about the plungers to Aptar as part of its misuse of Aptar's trade secrets, Aptar has "successfully amended its pleading to distinguish its New York law misappropriation of trade secrets claim from its breach of contract claim." Opternative, Inc. v. JAND, Inc., No. 17 Civ. 6936 (JFK), 2019 WL 624853, at *3 (S.D.N.Y. Feb. 13, 2019). Contrary to ARS's assertions, it does not matter that the plungers were not a trade secret or otherwise confidential (Dkt. No. 120 at 12); the point is that Aptar's allegations plausibly suggest that ARS misrepresented to Aptar what it was doing with the plungers as part of a course of deception to misuse Aptar's trade secrets "to allow Silgan, a company with no prior experience manufacturing drug delivery systems, to quickly and cheaply produce nasal delivery systems so similar to those produced by Aptar that the FDA has deemed them 'interchangeable.'" Aptar I, 2026 WL 866954, at *1 (quoting Dkt. No. 1 ¶¶ 190–228)). That is sufficient to give rise at the pleading stage to an inference of ARS's harmful intent.

Accordingly, granting leave to amend to add the Purchase Order Allegations would not be futile.

**2. Prejudice**

Prejudice occurs when an amendment would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another

jurisdiction." Soroof Trading Dev. Co., Ltd. v. GE Microgen, Inc., 283 F.R.D. 142, 147 (S.D.N.Y. 2012) (citing Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).

ARS argues that allowing the PFAC would cause prejudice "by requiring significant additional discovery on tangential issues[,]" including "discovery from and about third parties[,]" and ARS's use of non-confidential plungers. (Dkt. No. 120 at 13–14). Aptar counters that the scope of discovery will not expand because "ARS's willfulness and intent have always been relevant" because Aptar's DTSA claim permits recovery of double-damages and attorneys' fees if its trade secrets were "willfully and maliciously appropriated." (Dkt. No. 123 at 10 (quoting 18 U.S.C. § 1836(b)(3)(C), (D)).

We find that ARS's claims of prejudice are insufficient to overcome the liberal standard for amendment. See Harleysville Worcester Ins. Co., 2023 WL 4684652, at *4 (explaining that the party opposing amendment bears burden of showing prejudice). More than a month remains in the fact discovery period (Dkt. No. 48), although the parties have already indicated that they may well request an extension of fact discovery to accommodate recent changes to the scope of electronic discovery unrelated to the PFAC. (See Dkt. Nos. 126 (instructing parties as to custodians and search terms for ESI productions); 129 at 40 (indicating that the parties will "meet and confer to talk about what would be an appropriate schedule in view of the" Court's rulings)). To the extent a modest expansion — i.e., one or more additional search strings — may be necessary to capture responsive information concerning the new allegations in the PFAC, that will not inflict undue additional delay in moving this case forward.

Accordingly, ARS's claim of prejudice is not grounds for denying the MTA.

**IV. CONCLUSION**

For the reasons set forth above, the MTA is GRANTED. The First Amended Complaint for Breach of Contract and Trade Secret Misappropriation at Dkt. No. 106-1 shall be the operative pleading in this action.

Dated: New York, New York
June 17, 2026

SO ORDERED.

**SARAH L. CAVE**
**United States Magistrate Judge**